UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| CHRISTOPHER HART,<br><br>　　　　　　　Plaintiff,<br><br>　　v.<br><br>CENTURION MEDICAL; KASEY HOLM; KARA BOYER; RONA SIEGERT; PROVIDER UNDERWOOD; MARLEE HESS; and MEDICAL DIRECTOR DR. RADHA,<br><br>　　　　　　　Defendants. | Case No. 1:22-cv-00126-BLW<br><br>**INITIAL REVIEW ORDER BY SCREENING JUDGE** |

The Clerk of Court conditionally filed Plaintiff Christopher Hart's Complaint as a result of Plaintiff's status as an inmate and in forma pauperis request. The Court now reviews the Complaint to determine whether it or any of the claims contained therein should be summarily dismissed under 28 U.S.C. §§ 1915 and 1915A. Having reviewed the record, and otherwise being fully informed, the Court enters the following Order.

## 1.　Pleading Standards and Screening Requirement

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Under modern

pleading standards, Rule 8 requires a complaint to "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The *Iqbal/Twombly* "facial plausibility" standard is met when a complaint contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "[D]etailed factual allegations" are not required, but a plaintiff must offer "more than ... unadorned, the-defendant-unlawfully-harmed-me accusation[s]." *Id.* (internal quotation marks omitted).

If the facts pleaded are "merely consistent with a defendant's liability," or if there is an "obvious alternative explanation" that would not result in liability, the complaint has not stated a claim for relief that is plausible on its face. *Id.* at 678, 682 (internal quotation marks omitted). Bare allegations that amount to a mere restatement of the elements of a cause of action, without adequate factual support, are not enough.

The Prison Litigation Reform Act ("PLRA")[1] requires that the Court review complaints filed by prisoners seeking relief against a governmental entity or an officer or employee of a governmental entity, as well as complaints filed in forma pauperis, to determine whether summary dismissal is appropriate. 28 U.S.C.

---

[1] Pub. L. No. 104-134, 110 Stat. 1321, *as amended*, 42 U.S.C. § 1997e, *et seq.*

§§ 1915 & 1915A. The Court must dismiss any claims that do not have adequate factual support or are frivolous or malicious. 28 U.S.C. §§ 1915(e)(2) & 1915A.

The Court also must dismiss claims that fail to state a claim upon which relief may be granted or that seek monetary relief from a defendant who is immune from such relief. *Id*. These last two categories—together with claims that fall outside a federal court's narrow grant of jurisdiction—encompass those claims that might, or might not, have factual support but nevertheless are barred by a well-established legal rule.

The Court liberally construes the pleadings to determine whether a case should be dismissed for a failure to plead sufficient facts to support a cognizable legal theory or for the absence of a cognizable legal theory. The critical inquiry is whether a constitutional claim, however inartfully pleaded, has an arguable factual *and* legal basis. *See Jackson v. Arizona*, 885 F.2d 639, 640 (9th Cir. 1989) (discussing Federal Rule of Civil Procedure 12(b)(6)), *superseded by statute on other grounds as stated in Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (stating that Rule 12(b)(6) authority to dismiss claims was expanded by the PLRA, giving courts power to dismiss deficient claims, sua sponte, before or after opportunity to amend).

2.      **Factual Allegations**

Plaintiff is a prisoner in the custody of the Idaho Department of Correction

("IDOC"), currently incarcerated at the Idaho State Correctional Center. Plaintiff

claims that, on several occasions in December 2021 and January 2022, he had

difficulty urinating and was in significant pain—enough pain to initiate a "man

down" call. When Plaintiff did urinate, he saw blood in the urine. *Compl.*, Dkt. 3,

at 3–8. Plaintiff informed the various individual defendants of these symptoms but

has not yet been medically treated. Plaintiff also states that he has been told,

"unofficially," that he has kidney cancer. *Id.* at 2.

Plaintiff sues Centurion, the private entity providing Idaho inmates with

medical treatment under contract with the IDOC. Plaintiff alleges that Centurion

regularly (1) requires inmates to see multiple different medical providers instead of

keeping them with a single provider, and (2) does not provide aggressive

treatment. According to Plaintiff, "Centurion has a custom, policy, and practice of

… having inmates … be seen by one provider, who then gives Tylenol or aspirin

for things like the Plaintiff's kidney cancer, then Centurion has them see a different

provider who starts the diagnostic stage all over again." *Id.*

Plaintiff also names as Defendants five prison medical providers: Kasey

Holm, Kara Boyer, provider Underwood, Marlee Hess, and Dr. Radha. Finally,

Plaintiff sues Rona Seigert, who acted as the appellate authority when Plaintiff filed a grievance about his medical treatment.

### 3.    Discussion

#### A.    *Standards of Law*

Plaintiff brings his claims under 42 U.S.C. § 1983, the civil rights statute.[2] To state a plausible civil rights claim, a plaintiff must allege a violation of rights protected by the Constitution or created by federal statute proximately caused by conduct of a person acting under color of state law. *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991).

Prison officials and prison medical providers generally are not liable for damages in their individual capacities under § 1983 unless they personally participated in the alleged constitutional violations. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989); *see also Iqbal*, 556 U.S. at 677 ("[E]ach Government official, his or her title notwithstanding, is only liable for his or her own misconduct."). Section 1983 does not allow for recovery against an employer or principal simply because an employee or agent committed misconduct. *Taylor*, 880 F.2d at 1045.

However, "[a] defendant may be held liable as a supervisor under § 1983 'if there exists ... a sufficient causal connection between the supervisor's wrongful

---

[2] Though the Complaint includes a checked box indicating that Plaintiff might also be bringing claims under state law, *see Compl.* at 1, the body of the Complaint identifies only the Eighth Amendment as the basis for Plaintiff's claims. Thus, the Court does not consider the Complaint to assert claims under Idaho law.

conduct and the constitutional violation.'" *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011) (quoting *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989)). A plaintiff can establish this causal connection by alleging that a defendant (1) set in motion a series of acts by others that violated the Constitution, or knowingly refused to terminate a series of such acts, which the supervisor "knew or reasonably should have known would cause others to inflict a constitutional injury"; (2) knowingly failed to act or acted improperly "in the training, supervision, or control of his subordinates"; (3) acquiesced in the constitutional deprivation; or (4) engaged in "conduct that showed a reckless or callous indifference to the rights of others." *Id*. at 1205–09 (internal quotation marks omitted). A plaintiff may seek injunctive relief from officials who have direct responsibility in the area in which the plaintiff seeks relief. *See Rounds v. Or. State Bd. of Higher Educ.*, 166 F.3d 1032, 1036 (9th Cir. 1999).

To bring a § 1983 claim against a local governmental entity or a private entity performing a government function, a plaintiff must allege that the execution of an official policy or unofficial custom inflicted the injury of which the plaintiff complains, as required by *Monell v. Department of Social Services of New York*, 436 U.S. 658, 694 (1978). *See also Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1139 (9th Cir. 2012) (applying *Monell* to private entities performing a government function). Under *Monell*, the requisite elements of a § 1983 claim against such an

entity are the following: (1) the plaintiff was deprived of a constitutional right; (2) the entity had a policy or custom; (3) the policy or custom amounted to deliberate indifference to plaintiff's constitutional right; and (4) the policy or custom was the moving force behind the constitutional violation. *Mabe v. San Bernardino Cnty.*, 237 F.3d 1101, 1110-11 (9th Cir. 2001).

An unwritten policy or custom must be so "persistent and widespread" that it constitutes a "permanent and well settled" practice. *Monell*, 436 U.S. at 691 (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 167-168 (1970)). "Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996).

The Eighth Amendment to the United States Constitution protects prisoners against cruel and unusual punishment. To state a claim under the Eighth Amendment, prisoners must plausibly allege that they are "incarcerated under conditions posing a substantial risk of serious harm," or that they have been deprived of "the minimal civilized measure of life's necessities" as a result of the defendants' actions. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (internal quotation marks omitted). An Eighth Amendment claim requires the plaintiff to satisfy both (1) an objective standard, "that the deprivation was serious enough to

constitute cruel and unusual punishment," and (2) a subjective standard, that the defendant acted with "deliberate indifference." *Snow v. McDaniel*, 681 F.3d 978, 985 (9th Cir. 2012), *overruled in part on other grounds by Peralta v. Dillard*, 744 F.3d 1076 (9th Cir. 2014) (en banc).

The Eighth Amendment includes the right to adequate medical treatment in prison. Prison officials or prison medical providers can be held liable if their "acts or omissions [were] sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

Regarding the objective standard for prisoners' medical care claims, "society does not expect that prisoners will have unqualified access to health care." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). Therefore, "deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Id*. The Ninth Circuit has defined a "serious medical need" in the following ways:

> failure to treat a prisoner's condition [that] could result in further significant injury or the unnecessary and wanton infliction of pain[;] ... [t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain ....

*McGuckin v. Smith,* 974 F.2d 1050, 1059-60 (9th Cir. 1992) (internal citations omitted), *overruled on other grounds*, *WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997) (en banc).

As to the subjective standard, "deliberate indifference entails something more than mere negligence, [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835. A prison official or prison medical provider acts with deliberate indifference "only if the [prison official or provider] knows of and disregards an excessive risk to inmate health and safety." *Gibson v. Cnty. of Washoe*, 290 F.3d 1175, 1187 (9th Cir. 2002) (internal quotation marks omitted), *overruled on other grounds by Castro v. Cty. of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016) (en banc). "Under this standard, the prison official must not only 'be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004) (quoting *Farmer*, 511 U.S. at 837).

In the medical context, deliberate indifference can be "manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle*, 429 U.S. at 104–05 (footnotes omitted). Medical malpractice or negligence does not support a cause of action under the

Eighth Amendment, *Broughton v. Cutter Labs.*, 622 F.2d 458, 460 (9th Cir. 1980) (per curiam), and a delay in medical treatment does not violate the Eighth Amendment unless that delay causes further harm, *McGuckin*, 974 F.2d at 1060. Additionally, there is no constitutional right to an outside medical provider of one's own choice. *See Roberts v. Spalding,* 783 F.2d 867, 870 (9th Cir. 1986) ("A prison inmate has no independent constitutional right to outside medical care additional and supplemental to the medical care provided by the prison staff within the institution.").

"If a [prison official] should have been aware of the risk, but was not, then the [official] has not violated the Eighth Amendment, no matter how severe the risk." *Gibson*, 290 F.3d at 1188. Moreover, even prison officials or medical providers who *did* know of a substantial risk to an inmate's health will not be liable under § 1983 "if they responded reasonably to the risk, even if the harm ultimately was not averted." *Farmer*, 511 U.S. at 844. If medical personnel have been "consistently responsive to [the inmate's] medical needs," and the plaintiff has not shown that the medical personnel had "subjective knowledge and conscious disregard of a substantial risk of serious injury," there has been no Eighth Amendment violation. *Toguchi*, 391 F.3d at 1061.

"There is not one proper way to practice medicine in a prison, but rather a range of acceptable courses based on prevailing standards in the field." *Jackson v.*

*Kotter*, 541 F.3d 688, 697 (7th Cir. 2008) (internal quotation marks omitted).

Accordingly, mere differences in judgment as to appropriate medical diagnosis and

treatment between an inmate and prison medical providers—or, for that matter,

between medical providers—are not enough to establish a deliberate indifference

claim. *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989).

"[T]o prevail on a claim involving choices between alternative courses of

treatment, a prisoner must show that the chosen course of treatment 'was medically

unacceptable under the circumstances,' and was chosen 'in conscious disregard of

an excessive risk' to the prisoner's health." *Toguchi*, 391 F.3d at 1058 (alteration

omitted) (quoting *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996)). Stated

another way, a plaintiff must prove that medical providers chose one treatment

over the plaintiff's preferred treatment "even though they knew [the plaintiff's

preferred treatment] to be medically necessary based on [the plaintiff's] records

and prevailing medical standards." *Norsworthy v. Beard*, 87 F. Supp. 3d 1104,

1117 (N.D. Cal. 2015). To violate the Eighth Amendment, the choice of treatment

must have been "so inadequate that it demonstrated an absence of professional

judgment, that is, that no minimally competent professional would have so

responded under those circumstances." *Collignon v. Milwaukee Cnty.*, 163 F.3d

982, 989 (7th Cir. 1998); *see also Lamb v. Norwood*, 895 F.3d 756, 760 (10th Cir.

2018) ("[P]rison officials do not act with deliberate indifference when they provide medical treatment even if it is subpar or different from what the inmate wants.").

The Eighth Amendment requires that prison medical providers exercise informed medical judgment. Thus, if a medical treatment is denied because of a blanket governmental policy—rather than an individualized determination of the appropriate treatment for the particular inmate—a factfinder may infer deliberate indifference. *See Rosati v. Igbinoso*, 791 F.3d 1037, 1039–40 (9th Cir. 2015) ("Rosati plausibly alleges that prison officials were aware of her medical history and need for treatment, but denied the surgery because of a blanket policy …."); *Allard v. Gomez*, 9 F. App'x 793, 795 (9th Cir. 2001) (unpublished) ("[T]here are at least triable issues as to whether hormone therapy was denied ... on the basis of an individualized medical evaluation or as a result of a blanket rule, the application of which constituted deliberate indifference to [plaintiff's] medical needs.").

However, if providers make an individualized assessment and choose a treatment that, in their informed judgment, is medically appropriate, a plaintiff generally cannot establish deliberate indifference. *See Supre v. Ricketts*, 792 F.2d 958, 963 (10th Cir. 1986) ("While the medical community may disagree among themselves as to the best form of treatment for plaintiff's condition, the Department of Corrections made an informed judgment as to the appropriate form of treatment and did not deliberately ignore plaintiff's medical needs."). In such a

case, a plaintiff must plausibly allege that the defendants intentionally interfered with appropriate medical diagnosis and treatment—for example, by "creat[ing] a pretextual report to support denial" of a requested treatment. *Norsworthy*, 87 F. Supp. 3d at 1117.

Administrative or supervisory defendants who were involved in reviewing claims in an administrative grievance process might or might not be liable for the constitutional violations complained of in those grievances, depending upon (1) the type and timing of problem complained of, and (2) the role of the defendant in the process. For example, an appeals coordinator cannot cause or contribute to a completed constitutional violation, which occurred in the past and which is not remediable by any action the reviewer might take. *See, e.g., George v. Smith*, 507 F.3d 605, 609–610 (7th Cir. 2007) ("A guard who stands and watches while another guard beats a prisoner violates the Constitution; a guard who rejects an administrative complaint about a completed act of misconduct does not."). Thus, a defendant whose *only* role in a completed constitutional violation involved the denial of a grievance "cannot be liable under § 1983." *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999).

However, if the administrative or supervisory defendant "knew of an ongoing constitutional violation and … had the authority and opportunity to prevent the ongoing violation," yet failed to act to remedy the violation, then the

defendant may be held liable under § 1983. *Herrera v. Hall*, 2010 WL 2791586 at

*4 (E.D. Cal. July 14, 2010) (unpublished) (citing *Taylor*, 880 F.2d at 1045),

*report and recomm'n adopted*, 2010 WL 3430412 (E.D. Cal. Aug. 30, 2010).

Where claims are asserted against persons who supervise the provision of prison

medical care, the question is not whether the supervisor was "directly involved" in

the plaintiff's treatment. *Gonzalez v. Ahmed*, 67 F. Supp. 3d 1145, 1156 (N.D. Cal.

2014). Instead, the question is whether the Complaint plausibly alleges that the

supervisor knowingly failed to address a treating provider's deficient care, thereby

interfering with the plaintiff's medical treatment. *Id.*

A plaintiff cannot simply restate these standards of law in a complaint.

Instead, a plaintiff must provide specific facts supporting the elements of each

claim and must allege facts showing a causal link between each defendant and the

plaintiff's injury or damage. Alleging "the mere possibility of misconduct" is not

enough. *Iqbal*, 556 U.S. at 679.

### B. *Plaintiff May Proceed on Some of His Eighth Amendment Claims*

i. <u>Individual Defendants: Defendants Kasey Holm, Kara Boyer, Provider Underwood, Marlee Hess, Dr. Radha, and Rona Siegert</u>

Plaintiff's Complaint appears to state colorable Eighth Amendment claims

against each of the individual Defendants. Plaintiff's allegation that he has

informed all of these Defendants of his symptoms, but still did not receive medical

treatment, *see Compl.* at 8 ("I have been left untreated 4½ months"), gives rise to a reasonable inference that the individual Defendants acted with deliberate indifference to Plaintiff's serious medical needs—either by failing to treat him themselves or by failing to intervene once they learned of the lack of appropriate treatment. Therefore, Plaintiff may proceed on his Eighth Amendment claims against Defendants Holm, Boyer, Underwood, Hess, Radha, and Siegert.

ii.      Entity Defendant: Centurion

Plaintiff has not plausibly alleged that Defendant Centurion had a policy or custom amounting to deliberate indifference to Plaintiff's right to adequate medical treatment. *See Monell*, 436 U.S. at 694. Plaintiff identifies two alleged policies: that inmates are not guaranteed to see the same provider and that conservative treatment, such as over-the-counter medication, is attempted before more aggressive treatment. Neither practice plausibly constitutes deliberate indifference.

First, employing multiple providers, all of whom are responsible for providing medical treatment, seems to be a much better way of treating a patient than employing only a single provider. If there were only one provider, then anytime that particular provider is unavailable, treatment will necessarily be delayed.

Second, there is nothing deliberately indifferent about attempting conservative treatment when practical—particularly at the beginning of the

diagnostic process—and proceeding to more aggressive treatment only if the conservative treatment fails. That is, of course, how medical providers generally practice in the outside world, and prison is no different. Providers have a responsibility to their patients not to provide invasive or aggressive treatment when it is unnecessary. Thus, a policy or custom encouraging conservative treatment when possible is not deliberately indifferent.

Finally, the Complaint does not plausibly allege that any policy or custom of Centurion actually caused Plaintiff's allegedly inadequate medical treatment. Rather than being undertaken pursuant to a policy, the "obvious alternative explanation" is that the decisions of Plaintiff's individual medical providers were based on those providers' own independent judgment. *Iqbal*, 556 U.S. at 682. An employee's erroneous act or omission does not mean that the employer has a policy that encourages or requires that act or omission. Therefore, Plaintiff's claims against Centurion will be dismissed.

## 4.    Request for Appointment of Counsel

Plaintiff also seeks appointment of counsel. *Compl*. at 9. Unlike criminal defendants, prisoners and indigents in civil actions have no constitutional right to counsel unless their physical liberty is at stake. *Lassiter v. Dep't of Soc. Servs.*, 452 U.S. 18, 25 (1981). Whether a court appoints counsel for indigent litigants is

within the court's discretion. *Wilborn v. Escalderon*, 789 F.2d 1328, 1331 (9th Cir. 1986).

In civil cases, counsel should be appointed only in "exceptional circumstances." *Id*. To determine whether exceptional circumstances exist, the court should evaluate two factors: (1) the likelihood of success on the merits of the case, and (2) the ability of the plaintiff to articulate the claims pro se considering the complexity of legal issues involved. *Terrell v. Brewer*, 935 F.2d 1015, 1017 (9th Cir. 1991). Neither factor is dispositive, and both must be evaluated together. *Id*.

Plaintiff's Complaint, liberally construed, appears to state a claim upon which relief could be granted if the allegations are proven at trial. However, without more than the bare allegations of the Complaint, the Court does not have a sufficient basis upon which to assess the merits at this point in the proceeding. The Court also finds that Plaintiff has articulated the claims sufficiently, and that the legal issues in this matter are not complex. Based on the foregoing, the Court will deny Plaintiff's request for appointment of counsel. If it seems appropriate later in this litigation, the Court will reconsider appointing counsel.

A federal court has no authority to require attorneys to represent indigent litigants in civil cases under 28 U.S.C. § 1915(e)(1) or under the Court's inherent authority. *Mallard v. U.S. Dist. Court for S. Dist. of Iowa*, 490 U.S. 296, 298

(1989) (holding that the appointment of counsel provision in § 1915, formerly found in subsection (d), does not "authorize[] a federal court to require an unwilling attorney to represent an indigent litigant in a civil case"); *Veenstra v. Idaho State Bd. of Corr.*, Case No. 1:15-cv-00270-EJL (D. Idaho May 4, 2017) ("[The Court] does not have inherent authority to compel an attorney to represent Plaintiffs pro bono."). Rather, when a Court "appoints" an attorney, it can do so only if the attorney voluntarily accepts the assignment. *Id.* The Court has no funds to pay for attorneys' fees in civil matters such as this one, and it is often difficult to find attorneys willing to work on a case without payment—especially in prisoner cases, where contact with the client is particularly difficult. For these reasons, Plaintiff should attempt to procure counsel on a contingency or other basis, if possible.

## 5.   Conclusion

Plaintiff may proceed as outlined above. This Order does not guarantee that Plaintiff's claims will be successful. Rather, it merely finds that some are plausible—meaning that the claims will not be summarily dismissed at this time but will proceed to the next stage of litigation. This Order is not intended to be a final or a comprehensive analysis of Plaintiff's claims.

Defendants may still file a motion for dismissal or motion for summary judgment if the facts and law support such a motion.[3] Because (1) prisoner filings must be afforded a liberal construction, (2) governmental officials often possess the evidence prisoners need to support their claims, and (3) many defenses are supported by governmental records, an early motion for summary judgment—rather than a motion to dismiss—is often a more appropriate vehicle for asserting procedural defenses such as non-exhaustion or entitlement to qualified immunity.

## ORDER

**IT IS ORDERED:**

1.     Plaintiff's request for appointment of counsel (contained in the Complaint) is DENIED.

2.     Plaintiff may proceed on his Eighth Amendment claims of inadequate medical treatment against Defendants Holm, Boyer, Underwood, Hess, Radha, and Siegert. All other claims against all other Defendants are DISMISSED as implausible, and Centurion is TERMINATED as a party to this action. If Plaintiff later discovers facts sufficient to support a claim that has been dismissed, Plaintiff

---

[3] The standards for a motion to dismiss for failure to state a claim under Rule 12(b)(6) are the same standards that the Court has used to screen the Complaint under §§ 1915 and 1915A. Therefore, motions to dismiss for failure to state a claim are disfavored in cases subject to §§ 1915 and 1915A and may be filed only in extraordinary circumstances.

may move to amend the complaint to assert such claims.[4]

3.    Defendants Holm, Boyer, Underwood, Hess, Radha, and Siegert will be allowed to waive service of summons by executing, or having their counsel execute, the Waiver of Service of Summons as provided by Fed. R. Civ. P. 4(d) and returning it to the Court within 30 days. If Defendants choose to return the Waiver of Service of Summons, the answer or pre-answer motion will be due in accordance with Rule 12(a)(1)(A)(ii). Accordingly, the Clerk of Court will forward a copy of the Complaint (Dkt. 3), a copy of this Order, and a Waiver of Service of Summons to the following counsel:

a.    **Karin Magnelli**, Deputy Attorney General for the State of Idaho, Idaho Department of Corrections, 1299 North Orchard, Ste. 110, Boise, Idaho 83706, on behalf of the IDOC Defendant (Defendant Siegert).

---

[4] Any amended complaint must contain all of Plaintiff's allegations in a single pleading and cannot rely upon or incorporate by reference prior pleadings. Dist. Idaho Loc. Civ. R. 15.1 ("Any amendment to a pleading, whether filed as a matter of course or upon a motion to amend, must reproduce the entire pleading as amended. The proposed amended pleading must be submitted at the time of filing a motion to amend."); *see also Forsyth v. Humana, Inc.*, 114 F.3d 1467, 1474 (9th Cir. 1997) ("[An] amended complaint supersedes the original, the latter being treated thereafter as non-existent."), *overruled in part on other grounds by Lacey v. Maricopa County*, 693 F.3d 896, (9th Cir. 2012) (en banc); *Hal Roach Studios, Inc. v. Richard Feiner and Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1990) (holding that the district court erred by entering judgment against a party named in the initial complaint, but not in the amended complaint).

b.    **Aynsley Harrow Mull**, Associate General Counsel for

Centurion, 1447 Peachtree Street NE, Atlanta, Georgia, 30309,

on behalf of the Centurion Defendants (Defendants Holm,

Boyer, Underwood, Hess, and Radha). The Clerk will also send

an electronic copy of the same set of documents to Ms. Mull at

the email address on file with the Court.

4.    Should any entity determine that the individuals for whom counsel for

the entity was served with a waiver are not, in fact, its employees or

former employees, or that its attorney will not be appearing for the

entity or for particular former employees, it should file a notice within

the CM/ECF system, with a copy mailed to Plaintiff, identifying the

individuals for whom service will not be waived.

5.    If Plaintiff receives a notice indicating that service will not be waived

for an entity or for certain individuals, Plaintiff will have an additional

90 days from the date of such notice to file a notice of physical service

addresses of the remaining Defendants, or claims against them may be

dismissed without prejudice without further notice.

6.    The parties must follow the deadlines and guidelines in the Standard

Disclosure and Discovery Order for Pro Se Prisoner Civil Rights

Cases, issued with this Order.

INITIAL REVIEW ORDER BY SCREENING JUDGE - 21

7.      Any amended pleadings must be submitted, along with a motion to amend, within 150 days after entry of this Order.

8.      Dispositive motions must be filed by the later of (a) 300 days after entry of this Order or (b) 300 days after entry of an order denying all or part of a preliminary Rule 12(b) or Rule 56 motion.

9.      Each party must ensure that all documents filed with the Court are simultaneously served upon the opposing party (through counsel if the party has counsel) by first-class mail or via the CM/ECF system, pursuant to Federal Rule of Civil Procedure 5. Each party must sign and attach a proper mailing certificate to each document filed with the court, showing the manner of service, date of service, address of service, and name of person upon whom service was made.

10.     The Court will not consider ex parte requests unless a motion may be heard ex parte according to the rules and the motion is clearly identified as requesting an ex parte order, pursuant to Local Rule of Civil Practice before the United States District Court for the District of Idaho 7.2. ("Ex parte" means that a party has provided a document to the court, but that the party did not provide a copy of the document to the other party to the litigation.)

11.     All Court filings requesting relief or requesting that the Court

make a ruling or take an action of any kind must be in the form

of a pleading or motion, with an appropriate caption

designating the name of the pleading or motion, served on all

parties to the litigation, pursuant to Federal Rule of Civil

Procedure 7, 10 and 11, and Local Rules of Civil Practice

before the United States District Court for the District of Idaho

5.1 and 7.1. The Court will not consider requests made in the

form of letters.

12.     No party may have more than three pending motions before the

Court at one time, and no party may file a motion on a

particular subject matter if that party has another motion on the

same subject matter currently pending before the Court.

Motions submitted in violation of this Order may be stricken,

summarily denied, or returned to the moving party unfiled.

13.     Plaintiff must notify the Court immediately if Plaintiff's address

changes. Failure to do so may be cause for dismissal of this case

without further notice.

14.     Pursuant to General Order 324, this action is hereby RETURNED to

the Clerk of Court for random civil case assignment to a presiding

judge, on the proportionate basis previously determined by the District

Judges, having given due consideration to the existing caseload.

DATED: June 3, 2022

B. Lynn Winmill
U.S. District Court Judge